**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------×

ABIGAIL CLARKE,

        *Plaintiff,*

   *v.*                                        **17 CV 0967**

THE METROPOLITAN MUSEUM OF ART,

        *Defendant.*

------------------------------------------------------------------------×

---

## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

---

Walker G. Harman, Jr.
Edgar M. Rivera
THE HARMAN FIRM, LLP
220 Fifth Avenue, Suite 900
New York, New York 10001
212.425.2600
wharman@theharmanfirm.com
erivera@theharmanfirm.com

*Attorneys for Plaintiff Abigail Clarke*

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................................. **ii**

**PRELIMINARY STATEMENT** ........................................................................................ **1**

**STATEMENT OF FACTS** ................................................................................................ **3**

**STANDARD** ..................................................................................................................... **8**

**ARGUMENT** ................................................................................................................. **10**

    *POINT I.*

    *Plaintiff has alleged facts sufficient to state a hostile work environment claim under § 1981.* ........... *10*

    *POINT II.*

    *Plaintiff withdraws her wrongful termination claim under § 1981* ..................................................... *13*

    *POINT III.*

    *Plaintiff has alleged facts sufficient to state a retaliation claim under § 1981.* ................................. *13*

    *POINT IV.*

    *Plaintiff's NYCHRL claims are not barred by the election of remedies doctrine.* ............................... *14*

    *POINT V.*

    *Plaintiff has alleged facts sufficient to state a wrongful termination claim under the NYCHRL.* ...... *15*

    *POINT VI.*

    *Plaintiff has alleged facts sufficient to state a retaliation claim under the NYCHRL.* ....................... *16*

    *POINT VII.*

    *In the alternative, Plaintiff seeks leave to file an Amended Complaint.* .............................................. *18*

**CONCLUSION** ............................................................................................................... **19**

# TABLE OF AUTHORITIES

**Cases**

*Alfano v. Costello*
   294 F.3d 365 (2d Cir. 2002)....................................................................................... 11
*Arar v. Ashcroft*
   585 F.3d 559 (2d Cir. 2009)......................................................................................... 9
*Burlington N. & Santa Fe Ry. Co. v. White*
   548 U.S. 53 (2006).................................................................................................... 13
*Carter v. Syracuse City Sch. Dist.*
   No. 15 Civ. 2395, 2016 WL 3671631, 2016 U.S. App. LEXIS 12870 (2d Cir. July 11, 2016). 9
*Conforti v. Sunbelt Rentals, Inc.*
   201 F. Supp. 3d 278 (E.D.N.Y. 2016) ....................................................................... 17
*Cruz v. Coach Stores, Inc.*
   202 F.3d 560 (2d Cir. 2000)....................................................................................... 12
*Glint Factors v. Schnapp*
   126 F.2d 207 (2d Cir. 1942)....................................................................................... 19
*Harris v. Forklift Sys., Inc.*
   510 U.S. 17 (1993).................................................................................................... 10
*Hicks v. Gates Rubber Co.*
   833 F.2d 1406 (10th Cir.1987) .................................................................................. 12
*Higgins v. NYP Holdings, Inc.*
   836 F. Supp. 2d 182 (S.D.N.Y. 2011) ....................................................................... 14
*Makarova v. United States*
   201 F.3d 110 (2d Cir. 2000)......................................................................................... 9
*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*
   715 F.3d 102 (2d Cir. 2013)....................................................................................... 15
*Nat'l R.R. Passenger Corp. v. Morgan*
   536 U.S. 101 (2002).............................................................................................. 12, 18
*Petrisch v. HSBC Bank USA, Inc.*
   No. 07 Civ. 3303 (KAM) (JMA), 2013 WL 1316712 (E.D.N.Y. Mar. 28, 2013)................... 11
*Robinson v. 12 Lofts Realty, Inc.*
   610 F.2d 1032 (2d Cir. 1979)....................................................................................... 9
*Rochon v. Gonzales*
   438 F.3d 1211 (D.C. Cir. 2006) ................................................................................. 13
*Schreiber v. Worldco, LLC*
   324 F. Supp. 2d 512 (S.D.N.Y. 2004) ....................................................................... 16
*Shazor v. Prof'l Transit Mgmt., Ltd.*
   744 F.3d 948 (6th Cir. 2014) ..................................................................................... 12
*Siegel v. Converters Transp., Inc.*
   714 F.2d 213 (2d Cir. 1983)....................................................................................... 19
*Sotomayor v. City of N.Y.*
   713 F.3d 163 (2d Cir. 2013)....................................................................................... 17
*Sotomayor v. City of N.Y.*
   862 F. Supp. 2d 226 (E.D.N.Y. 2012) ....................................................................... 17

*Swierkiewicz v. Sorema N. A.*
  534 U.S. 506 (2002) ........................................................................... 9
*Vega v. Hempstead Union Free Sch. Dist.*
  801 F.3d 72 (2d Cir. 2015) .......................................................... 9, 17
*Walsh v. N.Y. City Hous. Auth.*
  828 F.3d 70 (2d Cir. 2016) .............................................................. 10
*Williams v. N.Y. City Hous. Auth.*
  61 A.D.3d 62 (2009) .......................................................................... 9

## Statutes

2005 N.Y.C. Local Law No. 85 .............................................................. 15
2016 N.Y.C. Local Law No. 35 .............................................................. 15
N.Y.C. Admin. Code § 8-101 ................................................................ 16
N.Y.C. Admin. Code § 8−107 ................................................................ 15
N.Y.C. Admin. Code § 8-130 ................................................................ 15
N.Y.C. Admin. Code § 8-502 ................................................................ 14

## Other Authorities

Craig Gurian, "A Return to Eyes on the Prize: Litigation Under the Restored New York City
  Human Rights Law," 33 *Fordham Urb. L.J.* 255 (2005) ........................................ 17
Shawn O. Utsey, Norman Giesbrecht, Joshua Hook, and Pia M. Stanard, *Cultural, Sociofamilial,
  and Psychological Resources that Inhibit Psychological Distress in African Americans
  Exposed to Stressful Life Events and Race-related Stress,* 55(1) Journal of Counseling
  Psychology (2008) ........................................................................ 11

## Rules

FED. R. CIV. P. 12(b)(1) ...................................................................... 8
FED. R. CIV. P. 15(a)(2) ..................................................................... 19
FED. R. CIV. P. 8(a)(2) ...................................................................... 9

Plaintiff Abigail Clarke respectfully submits this Memorandum of Law in Opposition to the Motion to Dismiss Plaintiff's Complaint (the "Motion") brought by Defendant The Metropolitan Museum of Art ("Defendant" or the "Museum").

## PRELIMINARY STATEMENT

Plaintiff brings claims against Defendant for discriminating against her based on her race (Black) and gender (female) by subjecting her to a hostile work environment and terminating her employment and for retaliating against her for her complaints of discrimination. Plaintiff brings her race discrimination and retaliation claims under § 1981 of the Civil Rights Act of 1866 ("§ 1981"), 42 U.S.C. § 1981, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101 *et seq.*, and her gender discrimination and retaliation claims under the NYCHRL. Defendant moves under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss all of Plaintiff's § 1981 claims, as well as her NYCHRL unlawful termination and retaliation claims, and under Rule 12(b)(1) for all of Plaintiff's NYCHRL claims; Defendant does not move to dismiss Plaintiff's NYCHRL hostile work environment claim under Rule 12(b)(6).

Ms. Clarke, a Security Dispatcher at the Museum, complained about race and gender discrimination for over a year of her employment. Each time she complained, however, the Museum not only did nothing to address the substance of her complaints, but retaliated against her for bringing them and demanded that she simply work through or ignore the unlawful conduct. When Ms. Clarke refused to tolerate the discriminatory treatment, she gained a reputation among the Museum's management as not being a "team player." Even after Ms. Clarke was transferred to another department, the Museum continued to punish and mistreat her until, finally, the conditions of her employment became so intolerable that she was forced to

resign. Had the Museum addressed Ms. Clarke's complaints in the first instance, she would still be enjoying her employment with the Museum—a job opportunity for which she moved from Arizona to New York. Instead, the Museum blamed the victim, subjected her to increased discrimination, and ultimately forced her out of her employment at the Museum entirely.

Defendant moves to dismiss the § 1981 claims on the mistaken belief that Ms. Clarke's allegations do not support the inference that the Museum subjected her to a hostile work environment or that her separation was due to retaliation. As shown below, the Complaint contains numerous allegations that demonstrate that Defendant subjected Ms. Clarke to a hostile work environment and that (1) the Museum took adverse action against her and (2) her complaining about race discrimination was a motivating factor in the employment decision.[1]

Defendant moves to dismiss the NYCHRL claims on the grounds that the New York State Division of Human Rights (the "Division") has not yet formally dismissed the action and, therefore, Plaintiff is precluded from bringing those claims here. However, Defendant only cites cases where the Division had issued a final ruling on the merits. Defendant cannot provide a single case where the Division had all but dismissed the case, as here, where Plaintiff requested that the Division dismiss the case for administrative convenience before the Division undertook any investigation, let alone a ruling on the merits, and months before the suit was brought to federal court.

Finally, if the Court does find deficiencies in the Complaint, Plaintiff cross moves to file a First Amended Complaint.

For the foregoing reasons, Defendant's motion should be denied.

---

[1] Plaintiff does not oppose the dismissal of the unlawful termination based on race claim brought under § 1981.

# STATEMENT OF FACTS

The following facts are from the Complaint, Defendant's Exhibits A through D, and the Declaration of Walker G. Harman, Jr. ("Harman Decl."), dated March 31, 2017, and accompanying exhibits.

Ms. Clarke identifies as Black.  Harman Decl. ¶ 3, Exhibit A, Complaint ("Compl.") ¶ 10.  Ms. Clarke holds a Bachelor of Arts degree in art history from the University of Arizona, a postgraduate certificate from the Association for Research into Crimes against Art, and a Master of Arts degree in museum studies from Johns Hopkins University.  Compl. ¶ 11.  In 2011, the Museum hired Ms. Clarke as a Senior Security Officer, and in and around 2014, the Museum promoted her to Security Dispatcher.  Compl. ¶¶ 12, 14.  As a Security Dispatcher, Ms. Clarke was responsible for overseeing the security of the Museum's collection, building, and visitors, and for responding to security threats, alarms, and emergencies.  Compl. ¶ 15.

Initially, the Museum incorrectly listed Ms. Clarke's race as "Hispanic" in the Museum's employee record-keeping system.  Compl. ¶ 16.  When Ms. Clarke's coworkers and supervisors later learned that Ms. Clarke is actually Black and not Hispanic, they began to treat her less well and subjected her to hostility and frequent racist comments.  Compl. ¶ 17.  Fabricio Trejos, a male Hispanic Museum employee, regularly made offensive racist "jokes" to and about Ms. Clarke.  Compl. ¶ 18.  For example, Mr. Trejos said, in front of Olivia Boudet, a Museum Office Manager, "Black people run fast because they're used to running from lions all the time." Compl. ¶ 19.  On another occasion, Mr. Trejos remarked, "The black team is always winning because they run faster," in front of Ms. Clarke and another Black female security guard. Compl. ¶ 20.  When Ms. Boudet witnessed Mr. Trejos make these racist comments, she trivialized the seriousness of his conduct, responding only, "Oh, Fabricio."  Compl. ¶ 21.  Upset

by the Museum's failure to address Mr. Trejos's unacceptable behavior, Ms. Clarke complained about the offensive conduct to her supervisor, Paul McHale, another Office Manager at the Museum. Compl. ¶ 22. However, Mr. McHale dismissed Ms. Clarke's complaint and—like Ms. Boudet—condoned Mr. Trejos' behavior, telling Ms. Clarke, "That's Fabricio being Fabricio. We just have to deal with him." Compl. ¶ 23.

Male Museum employees regularly treated female Museum employees, including Ms. Clarke, in a hostile and harassing manner. Compl. ¶ 24. In and around 2013, a male security guard, Marcello Accardo, told Ms. Clarke that he wanted to dance with her and roughly grabbed her hand. Compl. ¶ 25. When Ms. Clarke tried to break away from Mr. Accardo, he refused to let go of her. It was not until she begged him—near tears—to let go that he released her. Compl. ¶ 26. Ms. Clarke brought the incident to the attention of Jim Noone, an employee in the Museum's HR Department. Compl. ¶ 27. Mr. Noone dismissed Ms. Clarke's concerns, and in fact condoned Mr. Accardo's behavior, telling her, "Don't you think he was just being playful?" Compl. ¶ 28. When Ms. Clarke reiterated that Mr. Accardo had harassed her, Mr. Noone told Ms. Clarke that she was "overreacting" to Mr. Accardo's actions. Compl. ¶ 29. To demonstrate the egregiousness of Mr. Accardo's conduct, Ms. Clarke asked Mr. Noone to review the security camera footage of the incident. Compl. ¶ 30. Mr. Noone initially refused, but ultimately agreed to review the footage after Ms. Clarke's repeated insistence. Compl. ¶ 31. After viewing the video footage, Mr. Noone conceded that Ms. Clarke had told the truth about the incident: Mr. Accardo had forcibly held her close to his body until she begged him to let go. Compl. ¶ 32. The Museum never disciplined Mr. Accardo for harassing Ms. Clarke. Compl. ¶ 33. Further, after this report of sexual harassment, Mr. Noone and Museum management began to retaliate

against Ms. Clarke, treating her less well and refusing to take her future complaints seriously. Compl. ¶ 34.

On November 27, 2013, another male Museum employee, Joey Colon, aggressively yelled at Ms. Clarke, baselessly reprimanding her for saying "Happy Thanksgiving" and "Happy Holidays" to fellow Museum employees. Compl. ¶ 35. Mr. Colon was so loud and his tone so intimidating that Ms. Clarke felt extremely threatened and began to cry. Compl. ¶ 36. On or about December 5, 2013, Mr. Colon again began to yell at Ms. Clarke. Compl. ¶ 37. Frightened and upset by Mr. Colon's behavior, Ms. Clarke went to HR and complained to Mr. Noone about the harassment. Compl. ¶ 38. Instead of addressing her complaint, however, Mr. Noone blamed her for Mr. Colon's harassing behavior, telling her, "What did *you* do wrong?" Compl. ¶ 39. Mr. Noone refused to listen to Ms. Clarke or to the many Museum employees who had witnessed the event in question. Compl. ¶ 40. On or about December 9, 2013, Ms. Clarke placed a written report about the ongoing gender discrimination in her personnel file. Compl. ¶ 41.

Male Museum employees were treated better and more leniently than female Museum employees. Compl. ¶ 42. For example, the Museum furnished the men's locker rooms with objectively superior amenities and kept them in better condition than the women's locker rooms. Compl. ¶ 43. Mr. Trejos gave training, feedback, and guidance to male employees, but refused to do so for Ms. Clarke and other female employees. Compl. ¶ 44. Mr. Trejos assigned Ms. Clarke more work than male employees, including giving her job assignments outside of her role and requiring her to stay at work outside of her scheduled hours. Compl. ¶ 45. For example, Ms. Clarke was assigned the task of completing a daily Building Attendance Report ("BAR"), which was emailed to the department heads as well as the Museum's President and Director. Compl. ¶ 46. Since Mr. Trejos had experience completing the BAR and was assigned to the

same shift as Ms. Clarke, the Museum instructed him to train Ms. Clarke on the task.  Compl. ¶ 47.  However, Mr. Trejos refused to train Ms. Clarke, telling her to stay at work past her scheduled hours to "figure it out" on her own, while he spent time using social media websites rather than completing work.  Compl. ¶ 48.  When Ms. Clarke again requested that Mr. Trejos train her on completing the BAR, as the Museum had instructed him to do, Mr. Trejos refused.  Compl. ¶ 49.  Ms. Clarke complained to her supervisor, Mr. McHale, but just as before, nothing was done, and the discrimination continued.  Compl. ¶ 50.  Ms. Clarke then reported Mr. Trejos' behavior to another supervisor, John Packert.  Compl. ¶ 51.  Mr. Packert likewise did nothing to address Ms. Clarke's complaint, and Mr. Trejos' harassment of Ms. Clarke grew worse.  Compl. ¶ 52.

Around December 2014, Mr. Trejos went on his lunch break without informing Ms. Clarke or her coworker, Ryan Siskar, that a Museum guest with dementia had gone missing.  Compl.  ¶ 53.  Jose Rivero, a Museum supervisor, called Ms. Clarke and Mr. Siskar about the missing guest while Mr. Trejos was at lunch.  Compl. ¶ 54.  As Mr. Trejos had not informed Ms. Clarke and Mr. Siskar of the missing guest or entered the incident in the logbook, Ms. Clarke and Mr. Siskar could not apprise Mr. Rivero of what had happened or what the Museum was doing to locate the missing guest.  Compl. ¶ 55.  Ms. Clarke told Mr. Rivero that Mr. Trejos had not informed them of the incident.  Compl. ¶ 56.  Mr. Rivero asked for Mr. Trejos's cell phone number so that Mr. Rivero could contact Mr. Trejos directly.  Compl. ¶ 57.  When Mr. Trejos returned from his lunch break, he was visibly enraged and immediately began screaming at Ms. Clarke.  Compl. ¶ 58.  Mr. Trejos reprimanded Ms. Clarke for "disturbing" him on his lunch break and for exposing his irresponsibility to Mr. Rivero.  Compl. ¶ 59.  Because of this incident, Mr. Trejos violently threatened Ms. Clarke and Mr. Siskar, telling two other Museum employees,

Gary Miles and Carlos (last name unknown to Ms. Clarke), "If I had a gun, I would fucking shoot them." Compl. ¶ 60. Ms. Clarke believed this threat to be credible, as she knew that Mr. Trejos had previously physically assaulted another Museum employee. Compl. ¶ 61. As such, Ms. Clarke made a written report of the threat to the Museum's HR Department the following morning. Compl. ¶ 62. In this letter, Ms. Clarke also notified HR of Mr. Trejos's history of discrimination and aggression towards her, including his racist comments and hostility. Compl. ¶ 63. The following day, Ms. Clarke and Mr. Siskar were called to a meeting with Mr. Rivero and Mr. Packert. Compl. ¶ 64. Mr. Rivero and Mr. Packert did not take Ms. Clarke's report of Mr. Trejos's violent threat seriously because Ms. Clarke is female and discouraged Ms. Clarke from making further complaints. Compl. ¶ 65. Trivializing her complaint, Mr. Rivero asked Ms. Clarke, "Did you feel uncomfortable because you're a woman?" Compl. ¶ 66. Mr. Rivero then asked Mr. Siskar, "Did [Ms. Clarke] get you to report this because she's a woman?" Compl. ¶ 67. Ultimately, HR conducted an investigation, which resulted in the Museum asking Mr. Trejos to resign. Compl. ¶ 68. However, this "resignation" was entirely superficial, designed so that it would appear that the Museum had addressed the problem. The Museum invited Mr. Trejos back to work at the Museum shortly after his "resignation," and, upon information and belief, he is a current employee with the Museum. Compl. ¶ 69.

The Museum's retaliation against Ms. Clarke continued to grow worse after her reports of Mr. Trejos's threat, Mr. Accardo's sexual harassment, and the numerous other incidents of gender and race discrimination at the Museum. Compl. ¶ 70. Office managers, including Ms. Boudet and Izabelle Dudek, refused to speak to Ms. Clarke after learning of her complaints. Compl. ¶ 71. Ms. Clarke transferred to the Museum Registrar's Office, hoping to escape the constant race and gender discrimination in the security department, yet the Museum continued to

subject her to discrimination and harassment. Compl. ¶ 72. Employees in the Registrar's Office treated Ms. Clarke in a hostile, demeaning manner. Compl. ¶ 73. For example, they regularly called her "stupid," spoke to her in an aggressive tone, and ripped up her projects and paperwork in front of her. Compl. ¶ 74. The Registrar's Office refused to provide Ms. Clarke proper training, just as the Security Department had. Compl. ¶ 75. Ms. Clarke attempted to address the inadequate training on several occasions, but the situation was never resolved. Compl. ¶ 76. Instead, the Museum started to force Ms. Clarke to resign. Compl. ¶ 77. Ms. Clarke's supervisors at the Registrar's Office told her that she was using "too much" of her accrued sick time and that, because of her use of sick leave, "the department head would never promote [her]." Compl. ¶ 78. Ms. Clarke had begun to use her accrued sick leave after developing a serious anxiety condition in and around March 2015 as a result of the hostile work environment and discrimination at the Museum. Compl. ¶ 79. When Ms. Clarke complained to HR about the retaliation and continuing discrimination, the Museum effectively terminated her employment, telling her simply to "leave" and that the Museum would not contest her unemployment insurance. Compl. ¶ 80. As a result, Ms. Clarke's employment with the Museum ended on or about October 28, 2015. Compl. ¶ 81.

## STANDARD

Defendant moves to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

Under Rule 12(b)(1), a district court should not dismiss a case for lack of subject matter jurisdiction unless it lacks the statutory or constitutional power to adjudicate it. *See* FED. R. CIV. P. 12(b)(1). When determining a motion under Rule 12(b)(1), a court must construe all ambiguities and draw all inferences in the non-moving party's favor. *Makarova v. United States*,

201 F.3d 110, 113 (2d Cir. 2000). Under Rule 12(b)(6), a complaint is sufficient, and should not be dismissed, if it gives respondent "fair notice of the basis for petitioner's claims." FED. R. CIV. P. 8(a)(2); *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514 (2002). In determining whether a complaint provides such notice, the court must accept all factual allegations of the complaint as true and construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff. *Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009).

In a discrimination case, a plaintiff need only allege facts that support the inferences that (1) the employer took adverse action against her, and (2) her protected characteristic or activity was a motivating factor in the employment decision.[2] *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015) (holding that a plaintiff must only show that the employer took adverse action against and her protected characteristic was a motivating factor in the employment decision). Nothing more is necessary at the pleading stage. *See, e.g., Carter v. Syracuse City Sch. Dist.*, No. 15 Civ. 2395, 2016 WL 3671631, at *2, 2016 U.S. App. LEXIS 12870 (2d Cir. July 11, 2016) (summary order). In making the required plausibility determination, the court must be mindful of the "elusive" nature of intentional discrimination. *Vega*, 801 F.3d at 86 (quoting *Robinson v. 12 Lofts Realty, Inc.*, 610 F.2d 1032, 1043 (2d Cir. 1979)). Plaintiffs must rely on bits and pieces of information to support an inference of discrimination, i.e., a mosaic of intentional discrimination. *Id*. A court evaluating whether a

---

[2] Although Plaintiff's claims are also brought under the NYCHRL, there is a dearth of cases concerning what a plaintiff must allege for a NYCHRL claim to survive a motion to dismiss. As such, *Vega* and its antecedents may aid the court, but are not mandatory authority. *Williams v. N.Y. City Hous. Auth.*, 61 A.D.3d 62, 66–67 (2009) ("it is clear that interpretations of State or federal provisions worded similarly to City HRL provisions may be used as aids in interpretation only to the extent that the counterpart provisions are viewed 'as a floor below which the City's Human Rights law cannot fall, rather than a ceiling above which the local law cannot rise' (§ 1), and only to the extent that those State- or federal-law decisions may provide guidance as to the 'uniquely broad and remedial' provisions of the local law.").

plaintiff has stated a claim for discrimination must evaluate the allegations as a whole, never in isolation, to determine whether the defendant intentionally discriminated against the plaintiff. *See Walsh v. N.Y. City Hous. Auth.*, 828 F.3d 70, 76 (2d Cir. 2016) (reversing summary judgment upon finding that district court viewed each piece of evidence in isolation).

## ARGUMENT

As shown below, the Court should deny the Motion in its entirety, as Plaintiff has alleged facts that show that the Museum treated her worse than other employees because of her race, gender, and complaints about race and gender discrimination.

### POINT I.
### Plaintiff has alleged facts sufficient to state a hostile work environment claim under § 1981.

The Complaint alleges that the Museum systemically discriminates against its Black employees.  Compl. ¶ 17.  Throughout Ms. Clarke's employment, the Museum allowed its employees to treat Ms. Clarke worse than her co-workers because she is Black.

A discriminatorily abusive work environment—even one that does not seriously affect employees' psychological well-being—can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers.  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993).  So long as the environment would reasonably be perceived, and is perceived, as hostile or abusive, "there is no need for it also to be psychologically injurious." *Id.*  This is not a mathematically precise test and can be determined only by looking at the totality of the circumstances, which may include (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating; and (4) whether it unreasonably interferes with an employee's work performance. *Id*. at 23.

Mr. Trejos regularly made offensive racist "jokes" to and about Ms. Clarke, such as "Black people run fast because they're used to running from lions all the time." Compl. ¶¶ 19–20. When Ms. Clarke complained, the Museum trivialized the seriousness of Mr. Trejos' conduct. Compl. ¶ 21. But Mr. Trejos' comments were not at all trivial: They were objectifying and degrading, reinforcing antiquated and offensive stereotypes, and evoked images of the slave trade and of Black people as mere physical specimens. Race-related stress is a significantly more powerful risk factor than stressful life events for psychological distress. Shawn O. Utsey, Norman Giesbrecht, Joshua Hook, and Pia M. Stanard, *Cultural, Sociofamilial, and Psychological Resources that Inhibit Psychological Distress in African Americans Exposed to Stressful Life Events and Race-related Stress,* 55(1) Journal of Counseling Psychology, at 49 (2008). The Museum's failure to take these complaints seriously left Ms. Clarke feeling frustrated, hurt, and deeply upset and contributed significantly to her emotional distress.

Further, after she complained of discrimination, the Museum treated her worse: on multiple occasions, a Museum employee aggressively yelled at Ms. Clarke, such that Ms. Clarke felt extremely threatened and began to cry (Compl. ¶¶ 36, 37, 58–60); office managers refused to speak to Ms. Clarke (Compl. ¶ 71); and the Museum's employees regularly called her "stupid," spoke to her in an aggressive tone, and ripped up her projects and paperwork in front of her (Compl. ¶ 74). "Facially neutral incidents may be included among the 'totality of circumstances' that courts consider in any hostile work environment claim, provided that plaintiff offers some circumstantial or other basis for inferring that incidents neutral on their face were in fact discriminatory." *Petrisch v. HSBC Bank USA, Inc.*, No. 07 Civ. 3303 (KAM) (JMA), 2013 WL 1316712, at *14 (E.D.N.Y. Mar. 28, 2013) (citing *Alfano v. Costello*, 294 F.3d 365, 378 (2d Cir. 2002)). Here, Mr. Trejos made the anti-Black comments to Ms. Clarke, yelled at her, refused to

train her, gave her additional job responsibilities, and threatened to shoot her. Compl ¶¶ 18–21, 44–45, 60. Additionally, because of Ms. Clarke's complaints about Mr. Trejos' discriminatory behavior, Defendant's employees retaliated against her, called her stupid, destroyed her work, and isolated her. Comp. ¶¶ 71–75.

Further, the Court should view Plaintiff's allegations concerning gender—"Did you feel uncomfortable because you're a woman?" (Compl. ¶ 66), and "Did [Ms. Clarke] get you to report this because she's a woman?" (Compl. ¶ 67)—in conjunction with those concerning race, as courts have long held that anti-discrimination laws do not permit plaintiffs to "fall between two stools" when their claim rests on multiple protected grounds. *Shazor v. Prof'l Transit Mgmt., Ltd.*, 744 F.3d 948, 958 (6th Cir. 2014). In determining the pervasiveness of the harassment against a plaintiff, a court may aggregate evidence of racial hostility with evidence of sexual hostility. *See Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 572 (2d Cir. 2000) (J. Sotomayor) (aggregating Title VII claims) (citing *Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1416 (10th Cir.1987)). The combined result of these comments and Defendant's employees' motives to harass Plaintiff are the central inquiries of this action. Therefore, the Court should aggregate the allegations for the purposes of pleading.

Finally, under the continuing violation doctrine, the Court still must consider the entire scope of the hostile work environment claim. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002) (holding that behavior alleged outside the statutory period is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the time period). Here, to understand Plaintiff's hostile work environment and retaliation claim, one has to understand the trigger—the incident with Mr. Trejos—which

contributed to the hostile work environment.  Until the end of her employment in October 2015, the Museum continued to treat Ms. Clarke worse than other Museum employees due to her race.

As such, Plaintiff has alleged facts that permit the inference that the comments were frequent, severe, humiliating, and interfered with her ability to perform her work

### POINT II.
### Plaintiff withdraws her wrongful termination claim under § 1981.

Plaintiff does not oppose the dismissal of her wrongful termination claim under § 1981.

### POINT III.
### Plaintiff has alleged facts sufficient to state a retaliation claim under § 1981.

Plaintiff states a claim for retaliation where the retaliation would be "materially adverse to a reasonable employee." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 73 (2006). A retaliation claim is actionable under federal law if a reasonable person would have found the challenged action materially adverse, "which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* at 68 (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).  Courts have explicitly recognized threats, warnings, reprimands, transfers, negative or lowered evaluations, or verbal or physical abuse (whether or not it rises to the level of creating a hostile work environment) as retaliation against an individual because they engaged in protected activity.  *Id.*

Ms. Clarke's complaint about Mr. Trejo's racist and discriminatory remarks instigated a long series of escalating retaliatory actions on the part of the Museum, including subjecting Ms. Clarke to ridicule and humiliation, ignoring her complaints, and denying her the training necessary to do her job.  Ms. Clarke tried to escape the retaliation, but even after a transfer to a different department, the damage had already been done—she was stigmatized by the Museum's management, who continued to disfavor her even in her new capacity.  Compl. ¶¶ 72–75.  When

13

she needed to use sick leave to deal with an anxiety disorder caused by the Museum's discriminatory treatment, the Museum used that disorder as an excuse to push her out, when, in reality, the real reason was retaliation for her complaints of discrimination.

## POINT IV.
### Plaintiff's NYCHRL claims are not barred by the election of remedies doctrine.

Section 8-502 of the NYCHRL allows a person aggrieved by an unlawful discriminatory practice to bring a cause of action in any court of competent jurisdiction for damages unless he or she has filed a complaint with the New York City Commission on Human Rights (the "Commission") or with the Division with respect to such alleged unlawful discriminatory practice. N.Y.C. Admin. Code § 8-502(a). Where a complaint filed with the Commission or the Division is dismissed for administrative convenience, an aggrieved person maintains all rights to commence a civil action. N.Y.C. Admin. Code § 8-502(b).

Here, it is premature for the Court to dismiss the NYCHRL claims. The Division routinely grants requests to dismiss complaints without prejudice so that plaintiffs can pursue federal claims, over which the Division does not have jurisdiction. Additionally, the Division was considering dismissing the action when Plaintiff filed the instant action. Further, although Plaintiff filed a complaint with the Division, she only alleged violations of the New York State Human Rights Law, not the NYCHRL. Harman Decl. ¶ 4, Exhibit B, Plaintiff's Division Complaint, at 1.

The facts here depart materially from *Higgins v. NYP Holdings, Inc.*, 836 F. Supp. 2d 182 (S.D.N.Y. 2011). In *Higgins*, the court dismissed a claim where the Division had concluded, after an investigation, that there was "no probable cause" and, therefore, had already ruled on the merits. *Id.* at 188. Here, as the Division has not arrived at a finding of "no probable cause," Defendant's motion is premature.

## POINT V.
### Plaintiff has alleged facts sufficient to state a wrongful termination claim under the NYCHRL.

Plaintiff has alleged fact sufficient to state a wrongful termination claim based on race

and gender under the NYCHRL.  NYCHRL § 8–107(1) provides, in pertinent part:

> It shall be an unlawful discriminatory practice: (a) For an employer or an
> employee or agent thereof, because of the actual or perceived ... race [or]
> gender ... to discharge from employment such person or to discriminate against
> such person in compensation or in terms, conditions or privileges of employment.

N.Y.C. Admin. Code § 8–107(1).  The NYCHRL, under the 2005 Civil Rights Restoration Act,

must be construed "independently from similar or identical provisions of New York state or

federal statutes," such that "similarly worded provisions of federal and state civil rights laws

[are] a floor below which the City's Human Rights law cannot fall, rather than a ceiling above

which the local law cannot rise."  2005 N.Y.C. Local Law No. 85 § 1; *see* N.Y.C. Admin. Code §

8-130(a) ("The provisions of this title shall be construed liberally for the accomplishment of the

uniquely broad and remedial purposes thereof, regardless of whether federal or New York state

civil and human rights laws, including those laws with provisions worded comparably to

provisions of this title, have been so construed.").  In addition, exemptions to the NYCHRL must

be construed "narrowly in order to maximize deterrence of discriminatory conduct."  2016

N.Y.C. Local Law No. 35 § 2, N.Y.C. Admin. Code § 8-130(b).  Therefore, a defendant violates

the NYCHRL where it either (1) terminates a person because of his or her protected

characteristic, or (2) discriminates against such a person in compensation or in terms, conditions,

or privileges of employment.  The Second Circuit has explained that "the NYCHRL simplified

the discrimination inquiry: the plaintiff need only show that her employer treated her less well, at

least in part for a discriminatory reason." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715

F.3d 102, 110 n.8 (2d Cir. 2013).

Here, Plaintiff complained to Defendant about being sexually harassed and assaulted, yet Defendant took no action to disavow the conduct or discipline the individual. Compl. ¶¶ 25–33. The Museum furnished the men's locker rooms with objectively superior amenities and kept them in better condition than the women's locker rooms. Compl. ¶ 43. Mr. Trejos gave training, feedback, and guidance to male employees, but refused to do so for Ms. Clarke and other female employees. Compl. ¶ 44. Mr. Rivero and Mr. Packert did not take Ms. Clarke's report of Mr. Trejos's violent threat seriously because Ms. Clarke is female and discouraged Ms. Clarke from making further complaints. Compl. ¶ 65. Mr. Rivero then asked Mr. Siskar, "Did [Ms. Clarke] get you to report this because she's a woman?" Compl. ¶ 67. Verbal comments such as those made by Mr. Rivero constitute evidence of discriminatory motive. *Schreiber v. Worldco, LLC*, 324 F. Supp. 2d 512, 518 (S.D.N.Y. 2004).

Further, after Ms. Clarke was transferred to the Museum Registrar's Office, the Museum continued to subject her to discrimination and harassment. Compl. ¶ 72. Employees in the Registrar's Office treated Ms. Clarke in a hostile, demeaning manner, regularly called her "stupid," spoke to her in an aggressive tone, ripped up her projects and paperwork in front of her, refused to provide her with proper training, just as the Security Department had. Compl. ¶¶ 73–75. Ms. Clarke attempted to address the inadequate training on several occasions, but the situation was never resolved. Compl. ¶ 76. Far from it, the Museum forced Ms. Clarke to resign shortly after her transfer. Compl. ¶ 77.

## POINT VI.
### Plaintiff has alleged facts sufficient to state a retaliation claim under the NYCHRL.

The NYCHRL prohibits an employer from retaliating or discriminating in any manner against a person who has opposed any practice forbidden by the NYCHRL. N.Y.C. Admin. Code § 8-101(7). The retaliatory or discriminatory act or acts complained of must be reasonably

likely to deter a person from engaging in protected activity. *Sotomayor v. City of N.Y.*, 862 F. Supp. 2d 226 (E.D.N.Y. 2012), *aff'd,* 713 F.3d 163 (2d Cir. 2013). A useful question to be posed is this:

> What would happen if the policy manual of the covered entity being sued had stated that opposition to discrimination would be responded to by the retaliatory conduct that the covered entity was proved to have engaged in? If the response publicized were simply that the employee's supervisor would be less effusively friendly for a few days, it is not likely that any employee would be deterred from opposing discrimination in the future. But, if the full advance disclosure of retaliation manual explained that the cost of opposing discrimination would be the loss of all future social intercourse with other employees, the workplace reality would be that some people—indeed, many people—would become less likely to oppose discrimination that they otherwise would be. And the chilling effect would take place even in the absence of any fear of discharge, demotion, transfer, or poor performance.

Craig Gurian, *A Return to Eyes on the Prize: Litigation Under the Restored New York City Human Rights Law,* 33 Fordham Urb. L.J. 255, at 321–322 (2005).

Here, after complaining about protected activity, Ms. Clarke was aggressively yelled at by a male Museum employee, who baselessly reprimanded her. Compl. ¶ 35. On December 9, 2013, Ms. Clarke placed a written report about the ongoing gender discrimination in her personnel file. Compl. ¶ 41. The Museum's retaliation against Ms. Clarke continued to grow worse after her reports of Mr. Trejos's threat, Mr. Accardo's sexual harassment, and the numerous other incidents of gender and race discrimination at the Museum. Compl. ¶ 70. Office managers, including Ms. Boudet and Izabelle Dudek, refused to speak to Ms. Clarke after learning of her complaints. Compl. ¶ 71. A reasonable person would be dissuaded from making a complaint if doing so came at the price of accepting the foregoing.

Further, the Museum's isolation, harassment, degradation, and deprivation of Ms. Clarke creates a "mosaic" of retaliation. *Conforti v. Sunbelt Rentals, Inc.*, 201 F. Supp. 3d 278, 298 (E.D.N.Y. 2016) (quoting *Vega*, 801 F.3d at 87). Ms. Clarke transferred to the Museum

Registrar's Office, hoping to escape the constant race and gender discrimination in the security department, yet the Museum continued to subject her to discrimination and harassment. Compl. ¶ 72. Employees in the Registrar's Office treated Ms. Clarke in a hostile, demeaning manner, calling her "stupid," speaking to her in an aggressive tone, and destroying her projects and paperwork in front of her – things that were never done to other employees. Compl. ¶¶ 73-74. The Registrar's Office refused to provide Ms. Clarke proper training, just as the Security Department had. Compl. ¶ 75. The harassment Ms. Clarke experienced at the Registrar's Office was a continuation of the harassment experienced at the security department. *See Nat'l R.R. Passenger Corp.*, 536 U.S. at 105. Here, to understand Plaintiff's hostile work environment and retaliation claim, one has to understand the trigger, the incident with Trejos, which contributed to the hostile work environment.

All of this behavior would dissuade a reasonable employee from making a complaint.

## POINT VII.
### In the alternative, Plaintiff seeks leave to file an Amended Complaint.

If the Court grants Defendant's Motion, Plaintiff seeks leave to file an Amended Complaint, which would include additional allegations of gender discrimination in support of her claims, as well as facts describing Defendant's decision-making process in greater detail and linking decision-makers with individuals with discriminatory bias. Ms. Clarke will allege facts supporting that Defendant's security department corresponded with the registrar's office around the time of Ms. Clarke's transfer with the aim of disadvantaging Ms. Clarke and prejudicing the registrar's office against her. For example, decision-makers in the registrar's office searched Ms. Clarke's security department record in order to chastise her for invented "infractions," such as using "too much" sick time while working in the security department; made derisive comments about Ms. Clarke's having previously worked as a Security Dispatcher; and developed negative

opinions of Ms. Clarke based solely on the input of Ms. Clarke's harassers in the security department.

Under Rule 15, a party may amend its pleading only with the opposing party's written consent or the court's leave. FED. R. CIV. P. 15(a)(2). A court should freely give leave when justice so requires. FED. R. CIV. P. 15(a)(2). The purpose of Rule 15 "is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities." *Siegel v. Converters Transp., Inc.*, 714 F.2d 213, 216 (2d Cir. 1983). The Second Circuit has held for nearly 75 years that Rule 15 is to be liberally construed, particularly where an amendment does not "allege a new cause of action but merely […] make[s] defective allegations more definite and precise." *Glint Factors v. Schnapp*, 126 F.2d 207, 209 (2d Cir. 1942).

Here, Plaintiff has not filed any amended complaint, nor has Defendant filed an answer. As such, this situation is a textbook example of when courts should allow a plaintiff to amend her pleading.

Accordingly, the Court should allow Plaintiff to file an Amended Complaint in the event that it grants Defendant's motion.

## **CONCLUSION**

As Plaintiff has plausibly alleged that Defendant took adverse action against her based on her race and gender and in retaliation for complaints of race and gender discrimination, and subjected her to a hostile work environment based on her race and gender, the Court must deny Defendant's motion.

[SIGNATURE ON FOLLOWING PAGE]

Dated: New York, New York
      March 31, 2017

                                    Respectfully submitted,

                                    __s/ Walker G. Harman, Jr.__

                                    Walker G. Harman, Jr. [WH-8044]

                                    Edgar M. Rivera [ER-1378]

                                    THE HARMAN FIRM, LLP

                                    220 Fifth Avenue, Suite 900

                                    New York, New York, 10001

                                    212.425.2600

                                    wharman@theharmanfirm.com

                                    erivera@theharmanfirm.com

                                    *Attorneys for Plaintiff Abigail Clarke*