# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------×

ABIGAIL CLARKE,

      *Plaintiff*,

      *v.*

THE METROPOLITAN MUSEUM OF ART,

      *Defendant*.

------------------------------------------------------------------------×

17 CV 967

**COMPLAINT**

Plaintiff Abigail Clarke, by her counsel, The Harman Firm, LLP, alleges for her Complaint against Defendant The Metropolitan Museum of Art as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff Abigail Clarke ("Plaintiff" or "Ms. Clarke") seeks damages and costs against Defendant The Metropolitan Museum of Art ("Defendant" or the "Museum") for discriminating against her based on her race (Black) by subjecting her to a hostile work environment and ultimately terminating her employment, in violation of § 1981 of the Civil Rights Act of 1866 ("Section 1981"), 42 U.S.C. § 1981, and the New York City Human Rights Law ("NYCHRL"), N.Y. Admin. Code §§ 8-101 *et seq*.

2. Plaintiff also seeks damages and costs against Defendant for retaliating against her for her complaints of race discrimination, in violation of Section 1981 and the NYCHRL.

3. Plaintiff also seeks damages and costs against Defendant for discriminating against her based on her gender (female) by subjecting her to a hostile work environment and ultimately terminating her employment, in violation of the NYCHRL.

4. Plaintiff also seeks damages and costs against Defendant for retaliating against her for her complaints of gender discrimination, in violation of the NYCHRL.

1

## JURISDICTION AND VENUE

5. Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction over Plaintiff's claims, as the matter in controversy exceeds $75,000 and is between citizens of different states:

   a. Plaintiff is a citizen of the State of Arizona, as she is domiciled in the State of Arizona.

   b. Upon information and belief, Defendant is a citizen of the State of New York, as it is a corporation organized under the laws of the State of New York with its principal place of business in the State of New York.

6. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Southern District of New York, as a substantial part of the events giving rise to these claims occurred within this District.

## TRIAL BY JURY

7. Plaintiff respectfully requests a trial before a jury.

## PARTIES

8. Plaintiff is a resident of Maricopa County in the State of Arizona.

9. Upon information and belief, at all times relevant hereto, Defendant was and is a not-for-profit corporation organized under the laws of the State of New York with offices located at 1000 Fifth Avenue, New York, New York 10028 in New York County.

## STATEMENT OF FACTS

### I. Facts Common to All Claims

10. Ms. Clarke identifies as Black.

11. Ms. Clarke holds a bachelor of arts degree in art history from the University of Arizona, a postgraduate certificate from the Association for Research into Crimes against Art, and a master of arts degree in museum studies from Johns Hopkins University.

12. In and around 2011, the Museum hired Ms. Clarke as a Senior Security Officer.

13. Throughout her employment at the Museum, Ms. Clarke was an exemplary employee who consistently fulfilled all of her job responsibilities.

14. In and around 2014, the Museum promoted Ms. Clarke to Security Dispatcher.

15. As a Security Dispatcher, Ms. Clarke was responsible for overseeing the security of the Museum's collection, building, and visitors, and for responding to security threats, alarms, and emergencies.

## II. Race Discrimination

16. Initially, the Museum incorrectly listed Ms. Clarke's race as "Hispanic" in the Museum employee record-keeping system.

17. But when Ms. Clarke's Museum coworkers and supervisors later learned that Ms. Clarke is actually Black, they began to treat her less well and subjected her to hostility and frequent racist comments.

18. Fabricio Trejos, a Hispanic male Museum employee, regularly made offensive racist "jokes" to and about Ms. Clarke.

19. For example, Mr. Trejos said, in front of Olivia Boudet, a Museum Office Manager, "Black people run fast because they're used to running from lions all the time."

20. On another occasion, Mr. Trejos remarked, "The black team is always winning because they run faster," in front of Ms. Clarke and another Black female security guard.

21. When Ms. Boudet witnessed Mr. Trejos make these racist comments, she trivialized the seriousness of his conduct, responding only, "Oh, Fabricio."

22. Upset by the Museum's failure to address Mr. Trejos's unacceptable behavior, Ms. Clarke complained about the offensive conduct to her supervisor, Paul McHale, another Office Manager at the Museum.

23. However, Mr. McHale dismissed Ms. Clarke's complaint and—like Ms. Boudet—condoned Mr. Trejos' behavior, telling Ms. Clarke, "That's Fabricio being Fabricio. We just have to deal with him."

### III. Gender Discrimination

    A. *Harassment based on gender*

24. Male Museum employees regularly treated female Museum employees, including Ms. Clarke, in a hostile and harassing manner.

25. In and around 2013, a male security guard, Marcello Accardo, told Ms. Clarke that he wanted to dance with her and roughly grabbed her hand.

26. When Ms. Clarke tried to break away from Mr. Accardo, he refused to let go of her. It was not until she begged him—near tears—to let go that he loosened his grip, allowing Ms. Clarke to slip out.

27. Ms. Clarke brought the incident to the attention of Jim Noone, an employee in the Museum's HR Department.

28. Mr. Noone dismissed Ms. Clarke's concerns, and in fact condoned Mr. Accardo's behavior, telling her, "Don't you think he was just being playful?"

29. When Ms. Clarke reiterated that Mr. Accardo had harassed her, Mr. Noone told Ms. Clarke that she was "overreacting" to Mr. Accardo's actions.

4

30. To demonstrate the egregiousness of Mr. Accardo's conduct, Ms. Clarke asked Mr. Noone to review the security camera footage of the incident.

31. Mr. Noone initially refused, but ultimately agreed to review the footage after Ms. Clarke's repeated insistence.

32. After viewing the video footage, Mr. Noone conceded that Ms. Clarke had told the truth about the incident: Mr. Accardo had forcibly held her close to his body until she begged him to let go.

33. The Museum never disciplined Mr. Accardo for harassing Ms. Clarke.

34. Further, after this report of sexual harassment, Mr. Noone and Museum management began to retaliate against Ms. Clarke, treating her less well and refusing to take her future complaints seriously.

35. On or about November 27, 2013, another male Museum employee, Joey Colon, aggressively yelled at Ms. Clarke, baselessly reprimanding her for saying "Happy Thanksgiving" and "Happy Holidays" to fellow Museum employees.

36. Mr. Colon was so loud and his tone so intimidating that Ms. Clarke felt extremely threatened and began to cry.

37. On or about December 5, 2013, Mr. Colon again began to yell at Ms. Clarke.

38. Frightened and upset by Mr. Colon's behavior, Ms. Clarke went to HR and complained to Mr. Noone about the harassment.

39. Instead of addressing her complaint, however, Mr. Noone blamed her for Mr. Colon's harassing behavior, telling her, "What did *you* do wrong?"

40. Mr. Noone refused to listen to Ms. Clarke or to the many Museum employees who had witnessed the event in question.

41. On or about December 9, 2013, Ms. Clarke placed a written report about the ongoing gender discrimination in her personnel file.

B. *Disparate treatment based on gender*

42. Male Museum employees were treated better and more leniently than female Museum employees.

43. For example, the Museum furnished the men's locker rooms with objectively superior amenities and kept them in better condition than the women's locker rooms.

44. Mr. Trejos gave training, feedback, and guidance to male employees, but refused to do so for Ms. Clarke and other female employees.

45. Mr. Trejos assigned Ms. Clarke more work than male employees, including giving her job assignments outside of her role and requiring her to stay at work outside of her scheduled hours.

46. For example, Ms. Clarke was assigned the task of completing a daily Building Attendance Report ("BAR"), which was emailed to the department heads as well as the Museum's President and Director on a daily basis.

47. Since Mr. Trejos had experience completing the BAR and was assigned to the same shift as Ms. Clarke, the Museum instructed him to train Ms. Clarke on the task.

48. However, Mr. Trejos refused to train Ms. Clarke, telling her to stay at work past her scheduled hours to "figure it out" on her own, while he spent time using social media websites rather than completing work.

49. When Ms. Clarke again requested that Mr. Trejos train her on completing the BAR, as the Museum had instructed him to do, Mr. Trejos refused.

50. Ms. Clarke complained to her supervisor, Mr. McHale, but just as before, nothing was done, and the discrimination continued.

51. Ms. Clarke then reported Mr. Trejos' behavior to another supervisor, John Packert.

52. Mr. Packert likewise did nothing to address Ms. Clarke's complaint, and Mr. Trejos' harassment of Ms. Clarke grew worse.

53. In and around December 2014, Mr. Trejos went on his lunch break without informing Ms. Clarke or her coworker, Ryan Siskar, that a Museum guest with dementia had gone missing.

54. Jose Rivero, a Museum supervisor, called Ms. Clarke and Mr. Siskar about the missing guest while Mr. Trejos was at lunch.

55. As Mr. Trejos had not informed Ms. Clarke and Mr. Siskar of the missing guest or entered the incident in the logbook, Ms. Clarke and Mr. Siskar could not apprise Mr. Rivero of what had happened or what the Museum was doing to locate the missing guest.

56. Ms. Clarke told Mr. Rivero that Mr. Trejos had not informed them of the incident.

57. Mr. Rivero asked for Mr. Trejos's cell phone number so that Mr. Rivero could contact Mr. Trejos directly.

58. When Mr. Trejos returned from his lunch break, he was visibly enraged and immediately began screaming at Ms. Clarke.

59. Mr. Trejos reprimanded Ms. Clarke for "disturbing" him on his lunch break and for exposing his irresponsibility to Mr. Rivero.

60. Because of this incident, Mr. Trejos violently threatened Ms. Clarke and Mr. Siskar, telling two other Museum employees, Gary Miles and Carlos (last name unknown to Ms. Clarke), "If I had a gun, I would fucking shoot them."

61. Ms. Clarke believed this threat to be credible, as she knew that Mr. Trejos had previously physically assaulted another Museum employee.

62. As such, Ms. Clarke made a written report of the threat to the Museum's HR Department the following morning.

63. In this letter, Ms. Clarke also notified HR of Mr. Trejos's history of discrimination and aggression towards her, including his racist comments and hostility.

64. The following day, Ms. Clarke and Mr. Siskar were called to a meeting with Mr. Rivero and Mr. Packert.

65. Mr. Rivero and Mr. Packert did not take Ms. Clarke's report of Mr. Trejos's violent threat seriously because Ms. Clarke is female and discouraged Ms. Clarke from making further complaints.

66. Trivializing her complaint, Mr. Rivero asked Ms. Clarke, "Did you feel uncomfortable because you're a woman?"

67. Mr. Rivero then asked Mr. Siskar, "Did [Ms. Clarke] get you to report this because she's a woman?"

68. Ultimately, HR conducted an investigation, which resulted in the Museum asking Mr. Trejos to resign.

69. However, this "resignation" was merely for the Museum to appear that it had addressed the problem; the Museum invited Mr. Trejos to work at the Museum shortly after his "resignation." Upon information and belief, he is a current employee with the Museum.

### IV. Retaliation and Termination

70. The Museum's retaliation against Ms. Clarke continued to grow worse after her reports of Mr. Trejos's threat, Mr. Accardo's sexual harassment, and the numerous other incidents of gender and race discrimination at the Museum.

71. Office managers, including Ms. Boudet and Izabelle Dudek, refused to speak to Ms. Clarke after learning of her complaints.

72. Ms. Clarke transferred to the Museum Registrar's Office, hoping to escape the constant race and gender discrimination in the security department, yet the Museum continued to subject her to discrimination and harassment.

73. Employees in the Registrar's Office treated Ms. Clarke in a hostile, demeaning manner.

74. For example, they regularly called her "stupid," spoke to her in an aggressive tone, and ripped up her projects and paperwork in front of her.

75. The Registrar's Office refused to provide Ms. Clarke proper training, just as the Security Department had.

76. Ms. Clarke attempted to address the inadequate training on several occasions, but the situation was never resolved.

77. Instead, the Museum started to force Ms. Clarke to resign.

78. Ms. Clarke's supervisors at the Registrar's Office told her that she was using "too much" of her accrued sick time and that, because of her use of sick leave, "the department head would never promote [her]."

9

79. Ms. Clarke had begun to use her accrued sick leave after developing a serious anxiety condition in and around March 2015 as a result of the hostile work environment and discrimination at the Museum.

80. When Ms. Clarke complained to HR about the retaliation and continuing discrimination, the Museum effectively terminated her employment, telling her simply to "leave" and that the Museum would not contest her unemployment insurance.

81. As a result, Ms. Clarke's employment with the Museum ended on or about October 28, 2015.

## CAUSES OF ACTION
### FIRST CAUSE OF ACTION
**Hostile Work Environment in Violation of Section 1981**

82. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 81 with the same force as though separately alleged herein.

83. Section 1981 prohibits employers from discriminating against an employee on the basis of race.

84. Defendant discriminated against Plaintiff by subjecting her to hostile, discriminatory treatment and offensive, racially motivated comments.

85. As a direct and proximate consequence of Defendant's race discrimination, Plaintiff has suffered, and continues to suffer, substantial economic damages, including, but not limited to, back pay and front pay, as well as emotional distress and suffering, all in amounts to be determined at trial.

86. Defendant's discriminatory treatment of Plaintiff was willful and in reckless disregard of Plaintiff's federally protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

10

## SECOND CAUSE OF ACTION
### Wrongful Termination in Violation of Section 1981

87. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 86 with the same force as though separately alleged herein.

88. Section 1981 prohibits employers from discriminating against an employee on the basis of race.

89. Defendant unlawfully terminated Plaintiff because of her race.

90. As a direct and proximate consequence of Defendant's race discrimination, Plaintiff has suffered, and continues to suffer, substantial economic damages, including, but not limited to, back pay and front pay, as well as emotional distress and suffering, all in amounts to be determined at trial.

91. Defendant's discriminatory treatment of Plaintiff was willful and in reckless disregard of Plaintiff's federally protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

## THIRD CAUSE OF ACTION
### Retaliation in Violation of Section 1981

92. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 91 with the same force as though separately alleged herein.

93. Section 1981 prohibits employers from retaliating against an employee for making a complaint of racial discrimination.

94. Plaintiff properly complained to Defendant about racial discriminators' comments and conduct.

95. Defendant retaliated against Plaintiff by subjecting her to further discrimination and harassment, refusing to reprimand the discriminatory behavior, and ultimately terminating her employment.

96. As a direct and proximate consequence of Defendant's retaliation, Plaintiff has suffered, and continues to suffer, substantial economic and non-economic damages, including, but not limited to, back pay and front pay, as well as emotional distress and suffering, all in amounts to be determined at trial.

### FOURTH CAUSE OF ACTION
### Hostile Work Environment in Violation of the NYCHRL

97. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 96 with the same force as though separately alleged herein.

98. The NYCHRL prohibits employers from discriminating against an employee in compensation, terms, conditions or privileges of employment on the basis of, among other protected characteristics, race and gender.

99. Defendant discriminated against Plaintiff based on her race and gender by subjecting her to hostile, discriminatory treatment and offensive comments.

100. As a direct and proximate consequence of Defendant's race and gender discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

101. Defendant's discriminatory treatment of Plaintiff was willful and in reckless disregard of Plaintiff's protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

## FIFTH CAUSE OF ACTION
### Wrongful Termination in Violation of the NYCHRL

102. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 101 with the same force as though separately alleged herein.

103. The NYCHRL prohibits employers from discriminating against an employee in compensation, terms, conditions or privileges of employment on the basis of, among other protected characteristics, race and gender.

104. Defendant unlawfully terminated Plaintiff because of her race and gender.

105. As a direct and proximate consequence of Defendant's race and gender discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

106. Defendant's discriminatory treatment of Plaintiff was willful and in reckless disregard of Plaintiff's protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

## SIXTH CAUSE OF ACTION
### Retaliation in Violation of the NYCHRL

107. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 106 with the same force as though separately alleged herein.

108. The NYCHRL prohibits employers from retaliating against any employee for opposing or complaining of practices illegal under the NYCHRL.

109. Plaintiff properly complained to Defendant about discrimination and harassment to which she was subjected based on her race and gender.

110. Defendant retaliated against Plaintiff by subjecting her to further discrimination and harassment, refusing to reprimand the discriminatory behavior, and ultimately terminating her employment.

111. As a direct and proximate consequence of Defendant's retaliation, Plaintiff has suffered, and continues to suffer, substantial economic damages.

Case 1:17-cv-00096-DAB Document 15-1 Filed 02/31/17 Page 15 of 16

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A. For the first cause of action, damages to be determined at trial;
B. For the second cause of action, damages to be determined at trial;
C. For the third cause of action, damages to be determined at trial;
D. For the fourth cause of action, damages to be determined at trial;
E. For the fifth cause of action, damages to be determined at trial;
F. For the sixth cause of action, damages to be determined at trial; and
G. For such other and further relief as the Court deems just and proper.

Dated: New York, New York
February 9, 2017

By: *[signature]*
Walker G. Harman, Jr. [WH-8044]
Edgar M. Rivera [ER-1378]
THE HARMAN FIRM, LLP
220 Fifth Avenue, Suite 900
New York, NY 10001
(212) 425-2600
wharman@theharmanfirm.com
erivera@theharmanfirm.com

*Attorneys for Plaintiff*

15